UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TANIA GARMENDIA VALENZUELA, as
administrator of the estate of NELSON
OSEGUEDA MARTINEZ,

                                 Plaintiff,        **OPINION & ORDER**

    - against -                                No. 17-CV-8923 (CS)
                                                                 No. 17-CV-9279 (CS)

PUTNAM COUNTY and DEPUTY KEITH
BLESSING,

                                 Defendants.
----------------------------------------------------------------x
BUANI NUNEZ, as administrator of the estate of
WARNER Z. NUNEZ, and BEATRIZ GRAJALES,

                                 Plaintiffs,

    - against -

PUTNAM COUNTY and DEPUTY KEITH
BLESSING,

                                 Defendants.
----------------------------------------------------------------x

Appearances:

Nadia Lescott
Michael B. Ronemus
Ronemus & Vilensky, LLP
New York, New York
*Counsel for Plaintiff Garmendia Valenzuela*

Edwin Camacho
Ventura Law
Norwalk, Connecticut
*Counsel for Plaintiffs Nunez and Grajales*

James A. Randazzo
Drew W. Sumner
Portale Randazzo LLP
White Plains, New York
*Counsel for Defendants*

Seibel, J.

Before the Court are the renewed motions for summary judgment of Defendants Putnam County (the "County") and Deputy Keith Blessing, ("Blessing"). (No. 17-CV-9279 Doc. 53; No. 17-CV-8923 Doc. 61.)[1] For the following reasons, the motions are GRANTED.

## I.   BACKGROUND

### A.   Facts

The following facts are based on Defendants' Local Civil Rule 56.1 Statement, (Doc. 46 ("Ds' 56.1 Stmt.")), the 56.1 Response and Additional Statement of Material Facts of Plaintiff Tania Garmendia Valenzuela as administrator of the estate of Nelson Osegueda Martinez ("Valenzuela"), (Doc. 49 ("V's 56.1 Resp.")), the Local Rule 56.1(b) Statement of Plaintiffs Buani Nunez, as administrator of the estate of Warner Z. Nunez, and Beatriz Grajales ("Nunez and Grajales"), (No. 17-CV-9279 Doc. 45 ("N's 56.1 Stmt.")), and Defendants' Counterstatement to Plaintiff's Additional Statement of Material Facts, (Doc. 51), and are undisputed unless otherwise noted.[2]

---

[1] Citations to the docket refer to Case No. 17-CV-8923 unless otherwise indicated.

[2] Nunez and Grajales's 56.1 Statement is deficient for two reasons. First, it fails to comply, in part, with Federal Rule of Civil Procedure 56, which requires a party asserting that a fact is genuinely disputed to support that assertion with "cit[ations] to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and Local Civil Rule 56.1, which states that "[e]ach statement by the movant or opponent . . . , including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)," Local Civ. R. 56(d). (*See* N's 56.1 Stmt. ¶¶ 7-8.) Where Nunez and Grajales have failed to properly address Defendants' assertions of fact, those facts are considered undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e)(2); Local

At approximately 4 a.m. on September 3, 2016, Raymond Rivera, Elena Albarran, Warner Nunez, Beatriz Grajales, and Nelson Osegueda left Kas's Bar and Restaurant in Brewster, New York, in a Nissan Maxima driven by Rivera.  (V's 56.1 Resp. ¶¶ 52-54; *see* Doc. 1 ¶¶ 17, 26.)  At approximately 4:20 a.m., while traveling westbound on New York State Route 6 in his patrol vehicle, Blessing observed the Maxima traveling eastbound with a broken headlight. (V's 56.1 Resp. ¶¶ 1-3.)  Blessing performed a U-turn and followed the Maxima. (*Id.* ¶ 4.)

According to Defendants, Blessing observed the Maxima veering in the roadway, crossing the dividing line of the roadway three times, and going into the opposite lane of travel. (Ds' 56.1 Stmt. ¶¶ 5, 8.)  Valenzuela admits that Blessing claims to have so observed and does not dispute the truth of the observation.  (V's 56.1 Resp. ¶¶ 5, 8.)  Nunez and Grajales state that the Maxima "only faintly crossed over the dividing line of the roadway once."  (N's 56.1 Stmt. ¶ 5.)[3]

---

Civ. R. 56.1(c)-(d); *Cruz v. Wyckoff Heights Med. Ctr.*, No. 13-CV-8355, 2016 WL 4533568, at *1 (S.D.N.Y. July 19, 2016); *Dasrath v. Stony Brook Univ. Med. Ctr.*, No. 12-CV-1484, 2015 WL 1223797, at *1 (E.D.N.Y. Mar. 17, 2015); *see also Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute"); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties.").  Second, it does not comply with item 2.C.i of my Individual Practices, which requires the opposing party to reproduce each entry in the moving party's Rule 56.1 Statement before setting out its response thereto.  Nunez and Grajales's failure to reproduce the moving party's Rule 56.1 Statement defeats the purpose of my individual practice, which is designed to prevent the Court from having to go back and forth between the two Rule 56.1 Statements.

[3] Nunez and Grajales fail to cite to admissible evidence in response to Defendants' statement in ¶ 8 that Blessing saw the Maxima veering and crossing the dividing line into the opposite travel lane, (N's 56.1 Stmt. ¶ 8), and thus I consider Defendants' statement in that paragraph to be undisputed for purposes of Defendants' motion in No. 17-CV-9279.  *See* note 2 above.  Video from Blessing's dashboard camera, (Doc. 45 ("Randazzo Decl.") Ex. C ("Dash-Cam Video")), shows the Maxima touching the dividing line of the roadway at 4:19:33 and

3

According to Defendants, about five to fifteen seconds after making the U-turn, while traveling at about 40 miles per hour, Blessing activated his vehicle's emergency lights and attempted to initiate a motor vehicle stop based upon his observations of the broken headlight and erratic driving and his suspicion that the Maxima's operator might be intoxicated or impaired. (Ds' 56.1 Stmt. ¶¶ 6-7, 9, 11.) Valenzuela does not dispute these facts. (V's 56.1 Resp. ¶¶ 6-7, 9, 11.) Nunez and Grajales state that Blessing followed the Maxima for approximately 50 seconds before activating the emergency lights. (N's 56.1 Stmt. ¶ 6.)[4] Rivera did not pull over in response to the lights. (V's 56.1 Resp. ¶ 10.) Seconds later, while traveling about 45 miles per hour and keeping a steady distance behind the Maxima, Blessing activated his vehicle's siren. (*Id.* ¶¶ 12-13; *see* Dash-Cam Video at 4:19:57-4:20:12.) Rivera accelerated and Blessing, while radioing the Putnam County Sheriff's Department ("PCSD"), accelerated to about 50 miles per hour. (V's 56.1 Resp. ¶¶ 14-17.) Blessing gave PCSD dispatch his location and a description of the Maxima including its license plate number, and told dispatch that the Maxima failed to comply with his order to pull over and that they were approaching the Connecticut state line. (*Id.* ¶¶ 15, 18-19.) He asked dispatch to notify the Danbury Police Department. (*Id.* ¶ 19.)

Blessing testified that in deciding to pursue the Maxima, he considered factors set forth in the PCSD's Policies and Procedures, including that State Route 6 is a straight roadway, the roadway conditions were relatively dry, vehicular and pedestrian traffic along the route of the

---

crossing it at 4:19:52. The Dash-Cam Video does not clearly show the location of the Maxima with respect to the dividing line at all times.

[4] Nunez and Grajales cite to Blessing's Dash-Cam Video, which shows that Blessing followed the Maxima without emergency lights from 4:19:08 until 4:19:57, at which point he activated the emergency lights. (Dash-Cam Video at 4:19:08-4:19:57.)

pursuit is generally sparse at approximately 4:00 a.m., there were only two side streets from which other traffic could join the roadway along the route of the pursuit, and the nature of the offense and suspected criminal activity of the driver.  (*Id.* ¶¶ 14, 24.)  He knew the Maxima had passengers.  (Randazzo Decl. Ex. A at 84.)[5]

The Maxima continued to accelerate, and Blessing accelerated to about 60 miles per hour while following at a distance of approximately three to five car lengths.  (V's 56.1 Resp. ¶¶ 20, 22-23.)  The posted speed limit in the area was 55 miles per hour.  (*Id.* ¶ 21.)  Blessing continued to accelerate to keep the Maxima in his line of sight, reaching a top speed of approximately 89 miles per hour.  (*Id.* ¶¶ 25-26.)  The Maxima was traveling at least as fast.  (*Id.* ¶ 27.)  The Maxima's four passengers repeatedly begged Rivera to pull over and stop the car.  (*Id.* ¶ 29.)  Albarran and Grajales had noticed the emergency lights.  (*Id.* ¶ 58-59.)  Although he did not respond at first, Rivera eventually said that he was not going to stop the car.  (*Id.* ¶¶ 30, 33.)

At 4:21:02, Blessing radioed dispatch that he was crossing over into Connecticut.  (*Id.* ¶ 35.)  Blessing testified that at about 4:21:22, he decided to terminate his pursuit out of concern for the safety of Rivera, the passengers, and the public because the cars were approaching a business district in Danbury where the speed limit might drop, which could have more traffic, and which would have a park and ride and entry and exit ramps to I-84.  (*Id.* ¶¶ 36-39, 45.)  Starting at about 4:21:22, Blessing decelerated and fell back, and at 4:21:31, while about an

---

[5] I do not accept the truth of Blessing's testimony because he is an interested witness that the jury is not required to believe.  *See, e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (on motion for summary judgment, district court "must disregard all evidence favorable to the moving party that the jury is not required to believe"); *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019) (same); *Williams v. City of White Plains*, 718 F. Supp. 2d 374, 377 (S.D.N.Y. 2010) (evidence that court should disregard on summary judgment "includes testimony and affidavits from interested witnesses").  A jury, however, could easily credit Blessing's testimony.

eighth of a mile behind the Maxima, deactivated his car's emergency siren and disengaged from the pursuit. (*Id.* ¶¶ 42-43.) Defendants state that Blessing turned off the siren approximately 20 seconds after entering Connecticut, (Ds' 56.1 Stmt. ¶ 36); Valenzuela does not dispute this, (V's 56.1 Resp. ¶ 36), but Nunez and Grajales state that it was 29 seconds, (N's 56.1 Stmt. ¶ 36). According to Defendants and Valenzuela, Blessing slowed to about 73 miles per hour, (V's 56.1 Resp. ¶ 44), while Nunez and Grajales say that his speed was 78 miles per hour, (N's 56.1 Stmt. ¶ 4 (citing Dash-Cam Video at 4:21:31). Blessing estimated that the Maxima was traveling more than 100 miles per hour. (Randazzo Decl. Ex. A at 97.)

At approximately 4:21:34, the Maxima collided with a utility pole, killing Rivera, Warner Nunez, and Oseguedo, and injuring Grajales. (*Id.* at 99; V's 56.1 Resp. ¶¶ 46, 51; Randazzo Decl. Ex. B at 14-16.)[6] In the three seconds between Blessing deactivating his siren and the Maxima crashing, Blessing did not deactivate his emergency lights or radio that he was terminating the pursuit. (V's 56.1 Resp. ¶ 47.) Before the crash, Blessing observed that Rivera was in control of the Maxima and did not anticipate that it would crash. (*Id.* ¶¶ 49-50.) It was Blessing's first time pursuing a suspected drunk driver at high speeds. (Randazzo Decl. Ex. A at 21-23.)

Rivera had served seven years in prison and was paroled in August 2016. (V's 56.1 Resp. ¶ 80.) The crash occurred on September 3, 2016. (*Id.* ¶¶ 1, 46.) He lacked daily experience with driving. (*Id.* ¶ 81.) An autopsy and toxicology showed that Rivera's blood

---

[6] Albarran was apparently also injured but brought her case in the District of Connecticut. On March 11, 2020, Judge Stefan R. Underhill granted the motion for summary judgment of defendants Putnam County, the PCSD, and Blessing. *See Albarran v. Blessing*, No. 17-CV-2157, 2020 WL 1169401, at *13 (D. Conn. Mar. 11, 2020).

alcohol level was .16%. (*Id.* ¶ 82.) On August 31, 2016, Rivera had told Grajales that he would rather die than go back to jail. (*Id.* ¶ 87.)

### B.     Procedural History

On November 15, 2017, Valenzuela, a resident of Fairfield County, Connecticut, commenced Case No. 17-CV-8923 against Kas's Bar and Restaurant, LLC, Putnam County, and Blessing, (Doc. 1 at 1; *id.* ¶ 10), bringing claims of (1) negligence as to Kas's Bar and Restaurant, (*id.* ¶¶ 15-29); (2) negligence in violation of section 14-283 of the Connecticut General Statutes as to Blessing, (*id.* ¶¶ 30-49); (3) wrongful death as to all Defendants, (*id.* ¶¶ 50-52); (4) loss of services as to all Defendants, (*id.* ¶¶ 53-57); (5) violation of civil rights under 42 U.S.C. § 1983 as to Blessing and Putnam County, (*id* ¶¶ 58-61); (6) negligent retention and hiring as to Putnam County, (*id.* ¶¶ 62-65); and (7) municipal liability under § 1983 as to Putnam County, (*id.* ¶¶ 66-73).[7] All Defendants answered, (Docs. 21-22), and Putnam County and Blessing filed crossclaims against Kas's Bar and Restaurant, (Doc. 22).

On November 27, 2017, Nunez and Grajales, residents of Fairfield County, commenced Case No. 17-CV-9279 against Kas's Bar and Restaurant, LLC, Putnam County, and Blessing, (No. 17-CV-9279 Doc. 1 at 1; *id.* ¶ 13), bringing claims of (1) negligence under New York General Obligations law as to Kas's Bar and Restaurant, (*id.* ¶¶ 30-40); (2) negligence in violation of section 14-283 of the Connecticut General Statutes as to Blessing, (*id.* ¶¶ 41-50); (3) wrongful death as to all Defendants, (*id.* ¶¶ 51-53); (4) violation of civil rights under § 1983 as

---

[7] Valenzuela does not specify whether she brings the wrongful death claim under the laws of New York or Connecticut. Valenzuela also does not specify whether her negligent retention and hiring claims fall under § 1983 or state law. Because she specifies elsewhere when her claims fall under federal law, (*see, e.g.*, Doc. 1 ¶¶ 59, 67), I construe her negligent retention and hiring claims to fall under New York state law.

to Blessing and Putnam County, (*id.* ¶¶ 54-57); (5) negligent retention and hiring as to Putnam County, (*id.* ¶¶ 58-61); and (6) municipal liability under § 1983 as to Putnam County, (*id.* ¶¶ 62-69).[8]  All Defendants answered, (No. 17-CV-9279 Docs. 23-24), and Putnam County and Blessing filed crossclaims against Kas's Bar and Restaurant, (No. 17-CV-9279 Doc. 24).

At a conference held January 24, 2018, Plaintiffs withdrew all federal claims.[9]  At a conference held April 27, 2018, I consolidated both cases for all purposes.  Discovery concluded February 14, 2019.  (Doc. 31.)

The next day, Kas's Bar and Restaurant filed a pre-motion letter, (Doc. 33; No. 17-CV-9279 Doc. 31), as did the County and Blessing, (Doc. 34; No. 17-CV-9279 Doc. 32).  Valenzuela responded on February 22, (Doc. 36), in which response Nunez and Grajales joined, (No. 17-CV-9279 Doc. 34), and I held a pre-motion conference on March 1.  On April 8, the parties filed a stipulation voluntarily dismissing Kas's Bar and Restaurant and all crossclaims with prejudice, (Doc. 37; No. 17-CV-9279 Doc. 37), which I so ordered that same day, (Doc. 38; No. 17-CV-9279 Doc. 39).  The remaining parties filed their motion papers on August 5.  (Docs. 43-51; No. 17-CV-9279 Docs. 40-47.)  In support of their motion, Defendants filed a memorandum of law, (Doc. 44 ("Ds' Mem."); No. 17-CV-9279 Doc. 41), declaration of counsel with exhibits, (Randazzo Decl.; No. 17-CV-9279 Doc. 43), and Local Civil Rule 56.1 Statement, (Ds' 56.1 Stmt.; No. 17-CV-9279 Doc. 42).  Valenzuela filed a memorandum of law in opposition, (Doc.

---

[8] Nunez and Grajales do not specify whether they bring the wrongful death claim under the laws of New York or Connecticut.  They also do not specify whether their negligent retention and hiring claims fall under § 1983 or state law.  Because they specify elsewhere when the claims fall under federal law, (*see, e.g.*, No. 17-CV-9279 Doc. 1 ¶¶ 55, 63), I construe the negligent retention and hiring claims to fall under New York state law.

[9] Because all Plaintiffs are from Connecticut, I have diversity jurisdiction under 28 U.S.C. § 1332.  Putnam County, New York, is a New York municipal corporation.  Blessing is and was employed by Putnam County.  (Doc. 1 ¶¶ 12-14.)

48 ("V's Opp.")), a declaration of counsel with exhibits, (Doc. 47), and a response to Defendants' Local Civil Rule 56.1 Statement, (V's 56.1 Resp.).  Nunez and Grajales filed a memorandum of law in opposition, (No. 17-CV-9279 Doc. 44 ("N's Opp.")), and a response to Defendants' Local Civil Rule 56.1 Statement, (N's 56.1 Stmt.).  Defendants filed a reply memorandum of law, (Doc. 50 ("Ds' Reply"); No. 17-CV-9279 Doc. 47), and a counterstatement to Plaintiff's statement of additional facts, (Doc 51).

On March 30, 2020, in a ruling from the bench, I granted in part and denied in part Defendants' motions for summary judgment, (No. 17-CV-8923 Doc. 43; No. 17-CV-9279 Doc. 40).  (*See* Minute Entry dated Mar. 30, 2020.)  Specifically, I granted summary judgment for Defendants on the issue of recklessness in both cases, but I denied their motions on the other claims without prejudice to renewal pending the Connecticut Supreme Court's decision in *Borelli v. Renaldi*, No. SC 20232 (Conn.), a case considering an issue of law that I found to be controlling here.  The Connecticut Supreme Court's decision was released June 24, 2020, *see Borelli v. Renaldi*, No. 20232, 2020 WL 3467487 (Conn. June 24, 2020), and Defendants renewed their summary judgment motions in both cases, (No. 17-CV-9279 Doc. 53; No. 17-CV-8923 Doc. 61).  Plaintiffs Nunez and Grajales opposed Defendants' renewed motions, (No. 17-CV-9279 Doc. 55 ("Ps' Supp. Opp.")), and Defendants replied, (No. 17-CV-9279 Doc. 56 ("Ds' Supp. Reply")).  Plaintiff Valenzuela did not oppose Defendants' renewed motion.

## II.     LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

9

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).  "[W]here each side in such a case tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court."  *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258-59 (S.D.N.Y. 2013).

### III.     DISCUSSION

As discussed in the March bench ruling, because this is a diversity action, the Court must apply the choice-of-law principles of the forum state – here, New York – to determine which state's substantive law to apply to Plaintiffs' claims.  *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496

(1941)).[10]  Because this case involves a police pursuit that occurred in both New York and Connecticut, I first look to whether Connecticut and New York law conflict.  "In New York . . . the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws.  It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citation omitted).  "An actual conflict exists where the applicable law from each jurisdiction provides different substantive rules and those differences are relevant to the issue at hand and have a significant possible effect on the outcome of the trial." *Integrated Constr. Enters., Inc. v. GN Erectors, Inc.*, No. 16-CV-5561, 2020 WL 614991, at *4 (S.D.N.Y. Feb. 10, 2020) (internal quotation marks omitted).  "In the absence of substantive difference, . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

Section 14-283 of the Connecticut General Statutes provides, in pertinent part, that a police officer pursuing a suspect may "proceed past any red light or stop signal or stop sign, . . . exceed the posted speed limits or other speed limits," and disregard other traffic laws, but it does "not relieve the operator of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property."  Conn. Gen. Stat. Ann. § 14-283(a)-(d).

In very similar language, section 1104 of the New York Vehicle and Traffic Law provides that "[t]he driver of an authorized emergency vehicle may . . . [p]roceed past a steady

---

[10] Defendants incorrectly argue that "as the Court already decided, and is the law of the case, Connecticut law governs the portion of the police chase that occurred in Connecticut." (Ds' Supp. Reply at 1.)  I did not decide which state's law applies, or even whether a choice-of-law analysis was necessary, because it was not clear at the time of the bench ruling whether New York and Connecticut law actually conflicted, as discussed below.

11

red signal, a flashing red signal or a stop sign, . . . [e]xceed the maximum speed limits," and disregard other traffic regulations, but it does not "relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons." N.Y. Veh. & Traf. Law § 1104 (a)-(e). But New York law adds that section 1104 does not "protect the driver from the consequences of his reckless disregard for the safety of others." *Id.* § 1104(e). New York courts interpret that language to mean that "a police officer's conduct in pursuing a suspected lawbreaker may not form the basis of civil liability to an injured bystander unless the officer acted in reckless disregard for the safety of others." *Saarinen v. Kerr*, 84 N.Y.2d 494, 501 (1994). Whether Connecticut's section 14-283 and New York's section 1104 conflict turns on how Connecticut treats emergency responders' negligence.

Connecticut has a separate statute, section 52-557n, which abrogated common law by allowing plaintiffs to sue municipalities for negligence, but provided immunity for discretionary acts – *i.e.*, those requiring the exercise of judgment or discretion. *See Borelli*, 2020 WL 3467487, at *4. It provides no immunity for ministerial acts, which are those compelled by statute, regulation, or policy – in other words, "to be performed in a prescribed manner without the exercise of judgment or discretion." *Violano v. Fernandez*, 280 Conn. 310, 318 (2006). At the time of the March bench ruling, the question whether section 14-283 was discretionary or ministerial – and therefore whether allegedly negligent actions performed pursuant that statute are covered by Connecticut's discretionary immunity statute – was before the Connecticut Supreme Court, so I denied Defendants' motion for summary judgment without prejudice to renewal pending resolution of the issue.

The Connecticut Supreme Court held in *Borelli* that an officer's decision to initiate a pursuit under section 14-283 is discretionary. *Borelli*, 2020 WL 3467487, at *9. Nunez and

12

Grajales argue that the opinion does not address whether immunity attaches to the negligent operation of a police car during a chase. (Ps' Supp. Opp. at 2-3.) They are correct to the extent that, because of the narrowness of appellant's argument on appeal, the Connecticut Supreme Court "confined" its analysis "to an officer's decision to initiate a pursuit" and did not decide "the much broader question of whether and under what circumstances the duty to drive with due regard for the safety of others is discretionary or ministerial." *Borelli*, 2020 WL 3467487, at *3 n.5. But the opinion provides many principles that make it hard to avoid the conclusion that officers' duties while in pursuit are discretionary rather than ministerial. The Court emphasized that "ministerial acts" are those "to be performed in a prescribed manner without the exercise of judgment or discretion." *Id.* at *4. It explained that "the phrase 'due regard'" in section 14-283, "rather than mandating a particular response to specific conditions, imposes a general duty on officers to exercise their judgment and discretion in a reasonable manner." *Id.* at *5. "By its very definition, therefore, the duty to act with due regard is a discretionary duty." *Id.* (emphasis omitted). Further,

> § 14-283 imposes a duty on officers to exercise their judgment in determining whether to initiate, how to conduct, and whether to continue the pursuit of a fleeing motorist. The mere fact that officers are required to exercise good judgment in making those decisions does not change the discretionary nature of their duties.

*Id.* at *9 (emphasis omitted). Indeed, "[n]othing in the language of § 14-283, which exclusively governs response to emergencies, supports the position that the legislature intended to impose anything other than a discretionary duty, or that it intended to delineate an exception to § 52-557n." *Id.* at *5 n.6.

There thus does not appear to be any way that officers' conduct pursuant to section 14-283 could fail to fall under the protection of section 52-557n. And that result makes good sense. If officers are immunized from liability for negligence in the decision to initiate a pursuit, that

immunity should also extend to decisions to continue or terminate a pursuit, which require constant, evolving judgment calls regarding nature of the offense, the condition of the roadway, the weather, time of day, and other considerations. *See Albarran*, 2020 WL 1169401, at *8. Those types of judgment calls are exactly the kind of decisions section 52-557n is designed to protect, unless they rise to the level of recklessness.

The gravamen of Plaintiffs' claims is that Blessing should not have initiated the pursuit, (Ps' Supp. Opp. at 5-6), and should have terminated it sooner, (*id.* at 6). *Borelli* makes clear that both are discretionary decisions for which liability can attach only for recklessness. 2020 WL 3467487, at *9.[11] Connecticut law therefore aligns with New York law in protecting merely negligent conduct. In other words, both states provide immunity absent reckless conduct, and as I have previously ruled, Blessing was not reckless in his pursuit of the Maxima. Accordingly, under the laws of either state, Blessing is immune from liability for his conduct in pursuit of the Maxima, and Defendants' motions for summary judgment on Plaintiffs' negligence claims against Blessing are therefore granted.[12] *See Albarran*, 2020 WL 1169401, at *8 ("Blessing is entitled to discretionary act immunity for his actions during the high-speed chase."). The motion is also granted as to the negligence claims against the County because section 52-557n provides, in pertinent part, that "a political subdivision . . . shall not be liable for damages to person or

---

[11] *Borelli* acknowledged that there may be policies governing the conduct of the pursuit (as opposed to its initiation or termination), such as the direction that the officer notify dispatch of the chase. *Id.* at *8. But as I discussed in my earlier bench ruling, Plaintiffs do not point to any evidence that Blessing violated any such policies, or that any such violation caused the injuries at issue. And "[e]ven [such] detailed rules governing the conduct of the pursuit contemplate that officers will exercise discretion in implementing them." *Id.*

[12] I need not reach whether the "identifiable victim" doctrine applies because Nunez and Grajales admit that Connecticut's "'identifiable victim, imminent harm doctrine'[] has no application to the case at bar." (Ps' Supp. Opp. at 5.)

property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Conn. Gen. Stat. Ann. § 52-557n(a)(2)(b).

Summary judgment is also warranted on Plaintiffs' remaining claims. Plaintiffs' wrongful death claims are dismissed because such claims are derivative and there are no underlying claims. "Connecticut's wrongful death statute does not create a new cause of action, independent of any claims that the decedent might have had during his or her life"; it "merely allows the administrator of an estate to append to an already valid claim an additional element of damages." *Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 104, (collecting cases), *cert. denied sub nom. Remington Arms Co., LLC v. Soto*, 140 S. Ct. 513 (2019). New York law requires a plaintiff to establish, among other things, that decedent's death was caused by "the wrongful act, neglect or default of the defendant." *Garcia v. Dutchess County*, 43 F. Supp. 3d 281, 299 (S.D.N.Y. 2014), *aff'd in part, dismissed in part on other grounds sub nom. Garcia v. Sistarenik*, 603 F. App'x 61 (2d Cir. 2015) (summary order). Thus, where – as here – there is no valid underlying claim, a wrongful death claim cannot survive under the laws of either state.

As to Valenzuela's loss of services claim, "because a consortium action is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated . . . by an adverse judgment on the merits." *Hopson v. St. Mary's Hosp.*, 176 Conn. 485, 494 (1979) (applying Connecticut law); *see Mohamed v. Marriott Int'l, Inc.*, 905 F. Supp. 141, 158 (S.D.N.Y. 1995) ("Under New York law, a claim for loss of consortium or services is a derivative action and does not exist independent of the injured spouse's right to maintain an action for injuries sustained.") (internal quotation marks omitted). Because Valenzuela's negligence claim is dismissed, her loss of services claim cannot proceed.

Finally, under New York law, a negligent hiring and retention claim requires a plaintiff to establish, among other things, "the standard elements of negligence," which are not satisfied here. *Schoolcraft v. City of N.Y.*, 103 F. Supp. 3d 465, 539 (S.D.N.Y.), *on reconsideration in part*, 133 F. Supp. 3d 563 (S.D.N.Y. 2015).  Accordingly, Plaintiffs' claims against Putnam County for negligent hiring and retention must be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' renewed motions for summary judgment, (No. 17-CV-9279 Doc. 53; No. 17-CV-8923 Doc. 61), are GRANTED.  The Clerk of Court is respectfully directed to terminate those motions and close Case Nos. 17-CV-8923 and 17-CV-9279.

**SO ORDERED.**

Dated: September 8, 2020
      White Plains, New York

                                                  CATHY SEIBEL, U.S.D.J.